UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEFFREY ZINK, on behalf of himself andAMENDED REPORT AND
all others similarly situated,RECOMMENDATION

Plaintiff,13-CV-01076(A)(M)

v.

FIRST NIAGARA BANK, N.A.,

Defendant.
_____

Defendant First Niagara Bank, N.A. ("First Niagara") has moved to dismiss plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) [37].[1]  That motion, being dispositive, has been referred to me by Hon. Richard J. Arcara for a Report and Recommendation [38].  Oral argument was held on January 13, 2014 [46], after which the parties made supplemental submissions [48, 49].  For the following reasons, I recommend that the motion be denied.

BACKGROUND

Plaintiff Jeffrey Zink seeks to maintain a class action to recover penalties from First Niagara, pursuant to New York's Real Property Law ("RPL") §275(1) and Real Property Actions and Proceedings Law ("RPAPL") §1921(1), for its allegedly "systematic failure to timely present to the county clerks of New York State proof that mortgages have been satisfied".  Amended Complaint [21], ¶1.

---

[1]Bracketed references are to CM/ECF docket entries.

Both statutes contain the following provision: "Failure by a mortgagee to present a certificate of discharge for recording shall result in the mortgagee being liable to the mortgagor in the amount of five hundred dollars if he or she fails to present such certificate within thirty days [after payment] . . . in the amount of one thousand dollars if he or she fails to present a certificate of discharge for recording within sixty days and . . . in the amount of one thousand five hundred dollars if he or she fails to present a certificate of discharge for recording within ninety days."

Zink alleges that he obtained a mortgage for property in the Town of Cortlandt from HSBC Mortgage Corporation (USA) which was subsequently assigned to First Niagara (Amended Complaint [21], ¶12), and that First Niagara "failed to present a certificate or [*sic*] discharge for recording within ninety days of the date upon which the full amount of principle [*sic*] and interest was paid on the mortgage, as evidenced by the fact that the Satisfaction of Mortgage was not recorded for more than one-hundred and thirty-five (135) days after the discharge date" (id., ¶¶25, 32). He further alleges that "based on a review of county records, First Niagara appears to have failed to timely file mortgage satisfactions in thousands, if not tens of thousands, of instances" (id., ¶19).

In moving to dismiss, First Niagara argues that Zink's statutory claims are preempted by the National Banking Act ("NBA"), 12 U.S.C. §1, *et seq*., and a regulation promulgated thereunder by the Office of the Controller of the Currency ("OCC"), 12 C.F.R. §34.4(a)(10) (First Niagara's Memorandum of Law [37-1], Point I); that Zink lacks standing to pursue his claims because his satisfaction of mortgage has already been recorded (id., Point II);

and finally, that Zink fails to properly allege that First Niagara violated RPL §275 or RPAPL §1921 (id., Point III).

## ANALYSIS

A.   **Does Diversity Jurisdiction Exist?**

Before addressing the merits of the motion, I must first consider whether diversity jurisdiction exists.  Although First Niagara's motion does not raise this issue, I have an independent obligation to determine whether this court has jurisdiction to proceed.  *See* Henderson ex rel. Henderson v. Shinseki, ___U.S.___, 131 S.Ct. 1197, 1202 (2011) ("Courts do not usually raise claims or arguments on their own. But federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press").

Zink alleges that "[j]urisdiction in this civil action is authorized pursuant to 28 U.S.C. §1332(d)(2)(A), as minimal diversity exists, there are more than 100 Class members, some of whom are not citizens of New York State, and the amount in controversy is in excess of $5 million". Amended Complaint [12], ¶5.  Although no class has yet been certified, 28 U.S.C. §1332(d)(8) provides that "[t]his subsection shall apply to any class action before or after the entry of a class certification order".

Therefore, resolution of the issue of diversity jurisdiction must await the determination of whether any members of the proposed class are citizens of states other than New York, whether there are at least 100 members in the class, and whether the amount in controversy

exceeds $5 million. Since those determinations have not yet been made, I may not dismiss the action at this time for lack of diversity jurisdiction, for "where the issue of subject matter jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits, the court should . . . dismiss for lack of jurisdiction only where no triable issues of fact exist". Hamm v. United States, 439 F.Supp.2d 262, 264 (W.D.N.Y. 2006) (Larimer, J.), aff'd, 483 F.3d 135 (2d Cir. 2007). "This doctrine is applicable . . . before adequate discovery has been completed, and when conflicts of fact exist." Id.

However, should it subsequently be determined that the minimal diversity requirements of §1332(d)(2)(A) have not been satisfied, then this action must be dismissed for lack of subject matter jurisdiction.

**B.     Is the Application of RPL §275 and RPAPL §1921 in this Case Preempted by Federal Law?**

"[B]ecause federal preemption is an affirmative defense, the burden of proof is on the defendant." In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation, 739 F.Supp.2d 576, 600 (S.D.N.Y. 2010). For the following reasons, I conclude that First Niagara cannot satisfy that burden.

First Niagara's preemption argument focuses primarily upon 12 C.F.R. §34.4(a)(10), which states that "[a] national bank may make real estate loans under 12 U.S.C. 371 and §34.3, without regard to state law limitations concerning . . . [p]rocessing, origination,

servicing, sale or purchase of, or investment or participation in, mortgages".[2] First Niagara contends that "RPAPL §1921 and RPL §275 'concern' the processing and servicing of mortgages - and are thus preempted by §34.4(a) - because they prescribe requirements for discharging mortgages and impose penalties for noncompliance". First Niagara's Memorandum of Law [37-1], p. 6 (*citing* Cassese v. Washington Mutual, Inc., 255 F.R.D. 89 (E.D.N.Y. 2008) and McAnaney v. Astoria Financial Corp., 665 F.Supp.2d 132 (E.D.N.Y. 2009)).

However, I need not decide whether the statutes "concern the processing and servicing of mortgages" unless I first find that First Niagara "made" Zink's real estate loan, for - unlike 12 U.S.C. §371(a) and 12 C.F.R. §34.3(a) (both expressly referred to in §34.4(a)) which use the more expansive phrase "make, arrange, purchase, or sell loans" - §34.4(a) applies only to banks which "make" loans. This difference in language cannot be ignored. "[W]hen the regulator uses certain language in one part of the regulation and different language in another, the court assumes different meanings were intended". DaCosta v. Prudential Insurance Co. of America, 2010 WL 4722393 *5 (E.D.N.Y. 2010).

Zink alleges that First Niagara did not make his loan, but instead acquired his mortgage by assignment from HSBC Mortgage Corporation (USA). Amended Complaint [21], ¶12. Therefore, I conclude that §34.4(a) does not apply to this transaction. *See* Cannon v. Wells Fargo Bank N.A., 917 F.Supp.2d 1025, 1049 (N.D.Cal. 2013) ("It is difficult to see how there can

---

[2] "Federal regulations have no less pre-emptive effect than federal statutes." Fidelity Federal Savings and Loan Association v. de la Cuesta, 458 U.S. 141, 153 (1982). Therefore, "OCC regulations have the same preemptive effect as the NBA". Sheets v. Wells Fargo Bank, N.A., 2013 WL 5914404, *2 (N.D.Tex. 2013).

be preemption pursuant to §34.4. Section 34.4(a) expressly provides that a national bank has powers with respect to 'mak[ing] real estate loans' without regard to state law limitations . . . . But here, Wells Fargo did not extend a real estate loan to Plaintiffs").[3]

However, even if First Niagara *had* made Zink's loan, I am not persuaded by the preemption analysis in Cassese and McAnaney. At issue in Cassese was 12 C.F.R. §560.2(a), a regulation promulgated by the Office of Thrift Supervision ("OTS") pursuant to the Home Owners' Loan Act ("HOLA"), 12 U.S.C. §§1461 *et seq*. In pertinent part, that regulation states: "OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities".[4] The court in Cassese reasoned that "because [RPAPL §1921] purport[s] to regulate or otherwise affect credit activities of federal savings associations, [it is] preempted under 12 C.F.R. § 560.2(a)". 255 F.R.D. at 94.

---

[3]  Although the class which Zink seeks to certify could include mortgagors to whom First Niagara made direct loans (*see* Amended Complaint [21], ¶20), no motion for class certification has yet been made. Therefore, the only claim addressed by this motion is Zink's individual claim.

[4]  "Passage of the Dodd–Frank Act has changed both the type of preemption applicable under HOLA and the identity of the agency that oversees federal savings and loan associations. See 12 U.S.C. §§1465(a), 5412(b). These provisions came into effect on July 21, 2011, and have no retroactive effect . . ." . Molosky v. Washington Mutual, Inc., 664 F.3d 109, 113 n. 1 (6th Cir. 2011).

McAnaney involved the application of another OTS regulation, 12 C.F.R. §560.2(b)(10), which provides: "Illustrative examples . . . . the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding . . . (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages". The court held that RPAPL §1921 "imposes a substantive, affirmative requirement on lenders to complete the satisfaction of a mortgage within a specific time frame, a requirement that, when applied to federal savings associations, directly impacts their lending activities, particularly with respect to the processing and servicing of mortgages, thereby making preemption warranted pursuant to 12 C.F.R. 560.2(b)(10)". 665 F.Supp.2d at 163.

First Niagara suggests "[t]hat McAnaney and Cassese were decided under HOLA and not §34.4(a) is a distinction without a difference. The HOLA regulation at issue in those cases is virtually identical to §34.4(a)(10)". First Niagara's Memorandum of Law [37-1], p. 7. However, "there are subtle differences between the regulation of savings and loan institutions and national bank associations . . . . Most importantly, the OCC has explicitly avoided full field preemption in its rulemaking and has not been granted full field preemption by Congress". Gerber v. Wells Fargo Bank, N.A., 2012 WL 413997, *4 (D.Ariz. 2012). Unlike the HOLA regulation [12 C.F.R. §560.2], "the NBA rule [12 C.F.R. §34.4(a)] *only* preempts the types and features of state laws pertaining to making loans and taking deposits that are *specifically listed* in the regulation". Id. (emphasis in original, *citing* OCC Interpretive Letter No. 1005, 2004 WL 3465750).

Therefore, the preemption analysis under the NBA (unlike HOLA) requires careful consideration of whether the requirements of RPL §275(1) and RPAPL §1921(1) can be considered "processing" or "servicing" of mortgages within the meaning of 12 C.F.R. §34.4(a)(10).  While Cassese holds that RPAPL §1921 "purport[s] to regulate or otherwise affect credit activities of federal savings associations" (255 F.R.D. at 94), and McAnaney states that it relates to "the processing and servicing of mortgages" (665 F.Supp.2d at 163), neither opinion offers any textual analysis.  Therefore, I "deem them to be unpersuasive because they offer no explanation" for their conclusions.  United States v. Kelly, 535 F.3d 1229, 1235 n. 2 (10th Cir. 2008), cert. denied, 555 U.S. 1203 (2009).

"Legal authority as to what constitutes . . . processing and servicing of mortgages is limited."  Munoz v. Financial Freedom Senior Funding Corp., 573 F.Supp.2d 1275, 1280 (C.D.Cal. 2008).  Nevertheless, a review of that authority strongly suggests that the filing of a mortgage discharge is neither "processing" nor "servicing" of the mortgage.  For example, Santana v. CitiMortgage, Inc., 2006 WL 1530083 (Conn.Super. 2006) (unreported decision), involved the application of Connecticut General Statutes §49-8, which imposes a penalty upon mortgagees for untimely delivery of a mortgage release.[5]  In concluding that §49-8 was not preempted by HOLA, the court reasoned that "[e]xecuting a release does not occur during the lifetime of a loan, therefore it does not constitute servicing of the loan under 12 C.F.R.

---

[5] §49-8(c) provides that: 'The mortgagee . . . shall execute and deliver a release within sixty days from the date a written request for a release of such encumbrance . . . was sent to such mortgagee . . . . The mortgagee or plaintiff shall be liable for damages to any person aggrieved at the rate of two hundred dollars for each week after the expiration of such sixty days up to a maximum of five thousand dollars . . .".

§[560.2](b)(10), because there is no longer a loan to service." Id.,*3.[6]  "The executing of a release . . . has no bearing on the lending requirements of a thrift, because it is not financial in nature . . . . Because §49-8 does not affect lending, it is not preempted by federal law." Id., **5-6.

In Pinchot v. Charter One Bank, F.S.B. 792 N.E.2d 1105 (Ohio 2003), involving the application of Ohio Revised Code §5301.36 (containing requirements virtually identical to those of RPL §275(1) and RPAPL §1921(1)),[7] the court likewise held that the state statute was not preempted. The court reasoned that "in order to fall within the preemptive scope of [12 C.F.R.] Section 560.2, the state law in question must at least bear a concrete, logical, or substantial relation to some aspect or function of lending" (id. at 1115), and concluded that the statute's "recording requirement cannot be realistically connected to lending practices or to the operations of savings associations because it has no concrete significance to whether and how loans are made". Id. at 1113.[8]

---

[6]  See also Ricotta v. Ocwen Loan Servicing, LLC, 2008 WL 516674, *3 (D.Colo. 2008) ("'servicing' a loan means receiving periodic payments from the borrower, making payment of principal and interest to the lender, and making escrow payments to the appropriate entities. 12 U.S.C. §2605(i)(3)"); Bailey v. Security National Servicing Corp., 154 F.3d 384, 386 (7th Cir.1998) ("Servicing a loan . . . means that the defendants were responsible for sending out monthly statements, collecting mortgage payments and notifying borrowers of accounts payable"); General Discount Corp. v. Sadowski 183 F.2d 542, 544 (6th Cir.1950) ("Servicing a mortgage means the collection of monthly instalments, making required disbursements, and remitting to the owner of the mortgage the portions of the payments to which the owner is entitled").

[7]  "Within ninety days from the date of the satisfaction of a residential mortgage, the mortgagee shall record the fact of the satisfaction in the appropriate county recorder's office and pay any fees required for the recording . . . . If the mortgagee fails to comply with . . . this section, the mortgagor may recover, in a civil action, damages of two hundred fifty dollars."

[8]  For the same reason, the filing a mortgage satisfaction cannot be considered "processing". See Keener v. United States, 165 Ct. Cl. 334, 1964 WL 8585 (Ct. Cl. 1964) ("Loan processing involves the initial making of the loan, whereas loan administration involves the servicing of the loan until it is paid off or liquidated").

Federal agencies such as the OCC "have a unique understanding of the statutes they administer and an attendant ability to make informed determinations about how state requirements may pose an obstacle to the accomplishment and execution of the full purposes and objectives of Congress".  Wyeth v. Levine, 555 U.S. 555, 577 (2009).  Therefore, I believe that had the OCC intended 12 C.F.R. §34.4(a)(10) to preempt state laws relating to the filing of mortgage discharges, it would have specifically listed that activity in the regulation.[9]

Having concluded that RPL §275 and RPAPL §1921 are not preempted by 12 C.F.R. §34.4(a)(10), I must next consider the possible effect of 12 C.F.R. §34.4(b).  That regulation lists categories of state laws which "are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent consistent with the decision of the Supreme Court in Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner, et al., 517 U.S. 25 (1996)".  In Barnett Bank, the Court noted that states retain "the power to regulate national banks, where . . . doing so does not prevent or significantly interfere with the national bank's exercise of its powers".  517 U.S. at 33.  *See also* Watters v. Wachovia Bank, N.A., 550 U.S. 1, 12 (2007).

Among the listed categories are laws relating to the "[a]cquisition and transfer of real property". 12 C.F.R. §34.4(b)(6). Based on the rationale of Santana and Pinchot, both involving similar statutes, I conclude that RPL §275 and RPAPL §1921 fall within this category. *See* Santana, *5 ("the statute was enacted and continues not only to protect property owners, but it has a more general purpose of enhancing the marketability of titles and facilitating economic

---

[9]   That conclusion is buttressed by the fact that §34.4(a)(10) specifically mentions mortgage "origination", which is the opposite of mortgage discharge.

intercourse in deeded transactions . . . . §49-8 does not concern lending, and is more concerned with the marketability of land titles"); Pinchot, 792 N.E.2d at 1116 ("R.C. 5301.36 is intended to promote efficiency and certainty in clearing and transferring title in residential real property transactions, and is in all aspects consistent with the best practices of thrift institutions. It is . . . a real property statute not only in name, but in purpose and effect").

First Niagara admits that "paragraph 23 of Zink's mortgage requires First Niagara to arrange for the presentment of the satisfaction of mortgage after the mortgage is paid in full". First Niagara's Reply Memorandum of Law [43], p. 3. It does not explain why subjecting it to a penalty upon its failure to do so within 30 days of payment would "prevent or significantly interfere with the . . . exercise of its powers", as in Barnett Bank. See Pinchot, 792 N.E.2d at 1116 (holding that similar statutory penalty "has only an incidental effect on Charter One's lending practices").

For these reasons, I conclude that RPL §275 and RPAPL §1921 are not preempted by federal law.

C.   **If Not Preempted, Do RPL §275 and RPAPL §1921 Apply to These Facts?**

First Niagara next argues that "[r]elief is not available under RPL §275 and RPAPL §1921 in circumstances where - as here - a satisfaction of mortgage has already been recorded . . . . Monetary penalties are only available where the satisfaction of mortgage is not recorded at all, and the borrower has had to avail him or herself of the procedures specified in the statute." First Niagara's Memorandum of Law [37-1], pp. 8, 10.

The "procedures" to which First Niagara refers (First Niagara's Memorandum of Law [37-1], pp. 9-10) are set forth in RPAPL §§1921(2) and (5). Section 1921(2) provides that "[u]pon the failure or refusal of any . . . mortgagee to comply with the foregoing provisions of this section any person having an interest in the mortgage . . . *may* apply to the supreme court . . . for an order to show cause why an order should not be made by such court canceling and discharging the mortgage of record, and directing the register or clerk of any county in whose office the same may have been recorded to mark the same upon his records as canceled and discharged" (emphasis added). Section 1921(5)(a) states that "if within ninety days of receipt of payment, and request if required, the mortgagee fails to deliver to the mortgagor . . . the satisfaction of mortgage . . . any attorney-at-law *may* execute . . . an affidavit which complies with this section. Unless the mortgagee shall file a verified objection to such affidavit within thirty-five days of being filed, as of the date thirty-five days subsequent to its filing, such affidavit shall be recorded and satisfy the lien of such mortgage on the mortgaged premises" (emphasis added).

The use of the word "may" in both sections undercuts First Niagara's argument that these procedures are intended to be exclusive remedies. "[T]he use of the word 'may' in a statute . . . is generally permissive, meaning that the action spoken of is optional or discretionary." Plese v. Spokane County District Court, 2013 WL 2045761, *5 (E.D.Wash. 2013).[10] Thus, the fact that a mortgagor *may* invoke these procedures to obtain the recording of a mortgage satisfaction which has not been filed does not preclude the availability of monetary penalties where the satisfaction *has* been filed, albeit belatedly.

---

[10] *See also* United States v. Shand, ___F.3d___, 2014 WL 103986, *2 (2d Cir. 2014) ("the inclusion of the word 'may' suggests . . . discretion" over whether to act).

Under First Niagara's interpretation (namely that "penalties are only available where the satisfaction of mortgage is not recorded at all" (First Niagara's Memorandum of Law [37-1], p. 10)), there could never be a penalty as long as the certificate of discharge was eventually filed. That interpretation would effectively nullify the penalty provisions (which increase commensurately with the period of delay in presenting the discharge certificate) - and that I may not do. *See* People v. Ahearn, 196 N.Y. 221, 227 (1909) ("The principles ordinarily governing the interpretation of statutes command us . . . to avoid a construction which would leave any provision of the statute without effect"); In re Smathers' Will, 309 N.Y. 487, 495 (1956) ("we must assume that the Legislature did not deliberately place a phrase in the statute which was intended to serve no purpose . . . and each word must be read and given a distinct and consistent meaning"); Branford House, Inc. v. Michetti  81 N.Y.2d 681, 688 (1993) ("A construction rendering statutory language superfluous is to be avoided").

First Niagara next argues that Zink has failed to allege that it willfully refused to present his mortgage satisfaction for recording: "Petitions submitted pursuant section 1921 require a showing of *willful and unjustified refusal* on the part of the mortgagee to satisfy the mortgage." First Niagara's Memorandum of Law [37-1], p. 10 (*quoting* Jeffrey Towers, Inc. v. Straus, 31 A.D.2d 319, 324 (2d Dept. 1969), aff'd, 26 N.Y.2d 812 (1970) *and further citing* KOSC Development, Inc. v. Weinstock, 2007 WL 509803, *1 (Sup.Ct. Kings Co. 2007); Hempstead Realty, LLC v. Sturrup, 2011 N.Y. Misc. LEXIS 3589, *11 (Sup. Ct. Nassau Co. 2011)) (emphasis in original).

However, as previously discussed, Zink's claim does not involve a "petition" pursuant to RPAPL §1921. That is an optional procedure available to the mortgagor where the

-13-

certificate of discharge has not been filed; it does not govern his entitlement to statutory penalties for *belated* presentation of the certificate of discharge. "The general rule in New York is that statutes which on their face provide penal sanctions also imply a private right of action." Diehl & Sons, Inc. v. International Harvester Co., 445 F.Supp. 282, 289 (D.C.N.Y. 1978). *See also* Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 69 (1992) ("The existence of a statutory right implies the existence of all necessary and appropriate remedies"); Alston v. Countrywide Financial Corp., 585 F.3d 753, 763 (3rd Cir. 2009) ("the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing").

>   RPL §275 and RPAPL §1921 both clearly state that liability for penalties arises upon the mortgagor's "failure" to timely present the mortgage discharge for filing. Where the Legislature wished to condition a penalty upon a showing of "willful failure", it said so (*see*, *e.g.*, N.Y. Tax Law §685(g) ("Any person . . . who willfully fails to collect such tax . . . shall . . . be liable to a penalty")).[11] It did not do so here, and I "may not add to a statute language not employed by the Legislature". Elmwood-Utica Houses, Inc. v. Buffalo Sewer Authority 96 A.D.2d 174, 180 (4th Dept. 1983), app. dismissed, 61 N.Y.2d 759 (1984). Nor may I "add restrictions or limitations where none exist". Erie County Agricultural Society v. Cluchey, 40 N.Y.2d 194, 200 (1976).

---

[11] "A willful failure means a conscious, deliberate, purposeful failure as opposed to an unconscious, unwilling, negligent or mistaken failure." United States v. Platt, 435 F.2d 789, 793 (2d Cir. 1970).

Citing legislative history, First Niagara next argues that "[t]he statutory penalties are intended to compensate the mortgagor for costs incurred in seeking to obtain a satisfaction of mortgage . . . (after a special proceeding)". First Niagara's Memorandum of Law [37-1], p. 11. This argument fails to explain why the penalties increase over time, whereas the mortgagor's costs would not. More importantly, however, there is no reason to resort to legislative history to interpret the penalty provisions, which say nothing about costs incurred by the mortgagor - they simply state that the mortgagee will be liable to the mortgagor in the amounts specified if it fails to present the certificate of discharge within the times specified.

"Where words of a statute are free from ambiguity . . . the intent of the Legislature must be discerned from the language of the statute without resort to extrinsic material such as legislative history or memoranda." County of Niagara v. Daines, 91 A.D.3d 1288, 1289 (4th Dept. 2012); Matter of Daniel C., 99 A.D.2d 35, 41 (2d Dept. 1984), aff'd, 63 N.Y.2d 927 (1984). "[T]here is no necessary correlation between what the draftsman of the text of a bill understands it to mean and what members of the enacting legislature understand . . . . When the Legislature enacted the statutes and when the Governor signed them into law, they stood for what their words manifested and not the inner thoughts of a draftsman or adviser. After all, it was the words, not the thoughts which were to influence the conduct of others." People v. Graham, 55 N.Y.2d 144, 151 (1982).

Finally, I am not persuaded by First Niagara's argument that "Zink could not have brought this class action suit in New York State court". First of Niagara's Memorandum of Law [37-1], p. 8 (*citing* N.Y.C.P.L.R. § 901(b)). "[B]ecause federal law and not state procedural law governs class actions in federal court, New York law's prohibition on awarding statutory penalties

in class actions [is] inapplicable to suits in federal court". Gold v. New York Life Insurance Co., 730 F.3d 137, 141 n. 1 (2d Cir. 2013) (*citing* Shady Grove Orthopedic Associates, P. A. v. Allstate Insurance Co., 559 U.S. 393 (2010)). Moreover, as previously discussed, the question of whether class certification is appropriate is not yet before me.

**D. Has Zink Stated a Plausible Claim for Relief?**

First Niagara argues that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face". First Niagara's Memorandum of Law [37-1], p. 12 (*quoting* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). While I have yet to see a plausible reconciliation of Iqbal's pleading standard with the conclusory form pleadings approved by Rule 84,[12] I believe that Zink's Amended Complaint satisfies the Iqbal standard in any event.

First Niagara contends that "while Zink alleges two causes of action - one under RPAPL §1921 and the second under RPL §275 - he cannot seek relief under both statutes . . . . Zink cannot obtain duplicate relief". First Niagara's Memorandum of Law [37-1], p. 13. There is a difference between "seeking" and "obtaining" relief. Zink is free to seek relief under either or both statutes, the pertinent provisions of which are essentially identical. However, if he prevails under both statutes, he will only be entitled to one recovery.

[12] *See* Automated Transactions, LLC v. First Niagara Financial Group, Inc., 2010 WL 5819060 (W.D.N.Y. 2010) (McCarthy, M.J.), adopted, 2011 WL 601559 (W.D.N.Y. 2011) (Arcara, J.).

First Niagara next argues that Zink "fails to allege the date that First Niagara arranged to present his Satisfaction of Mortgage to the County Clerk. Without such factual detail, he cannot adequately plead a claim". Id., p. 14.  However, the date on which First Niagara arranged to present his satisfaction of mortgage to the County Clerk is known only to First Niagara, and "pleading with particularity standards may be relaxed when facts are peculiarly within the opposing party's knowledge".  United States ex rel. Siegel v. Roche Diagnostics, Corp., ___F. Supp.2d___, 2013 WL 6847689, *5 (E.D.N.Y. 2013).

Zink alleges that "the Satisfaction of Mortgage was not recorded for more than one-hundred thirty-five (135) days after the discharge date".  Amended Complaint [21], ¶¶17, 25, 32.  From these allegations, it would be reasonable to infer that it was not presented within 90 days. While other inferences might be possible, that is the inference which I must draw for purposes of this motion.  See Aegis Insurance Services, Inc. v. 7 World Trade Co., L.P., 737 F.3d 166, 176 (2d Cir. 2013) (in considering a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint liberally . . . and draw all reasonable inferences in the plaintiff's favor").

In light of that inference, the Amended Complaint plausibly alleges that First Niagara failed to present the discharge certificate for recording within the times specified in RPL §275 and RPAPL §1921, entitling Zink to an award of penalties.

## CONCLUSION

For these reasons, I recommend that First Niagara's motion to dismiss [37] be denied. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by February 13, 2014 (applying the

time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: January 27, 2014

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge