UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JEFFREY ZINK, on behalf of himself and
all others similarly situated,                                    **DECISION AND ORDER**

                                     Plaintiff,          13-CV-01076-RJA-JJM

v.

FIRST NIAGARA BANK, N.A.,

                                     Defendant.

_____

   Before me is plaintiff's "Uncontested Motion for Preliminary Approval of Class

Action Settlement" [101].[1]  Oral argument was held on February 22, 2016 [110].  For the

following reasons, I will temporarily stay consideration of that motion.[2]


**BACKGROUND**

   Plaintiff Jeffrey Zink commenced this action on July 19, 2013, seeking to certify a

class and recover penalties from defendant First Niagara Bank, N.A. ("First Niagara") pursuant

to New York's Real Property Law ("RPL") §275(1) and Real Property Actions and Proceedings

Law ("RPAPL") §1921(1), for its allegedly "systematic failure to timely present to the county

clerks of New York State proof that mortgages have been satisfied".  Complaint [1], ¶ 1;

Amended Complaint [21], ¶ 1.

---

[1]  Bracketed references are to CM/ECF docket entries.

[2]  "The District Court has broad discretion to stay proceedings as an incident to its power to control
its own docket", Clinton v. Jones, 520 U.S. 681, 706 (1997), and may do so "*sua sponte*".  City of New
York v. Gutlove & Shirvint, Inc., 2008 WL 4862697, *1 (E.D.N.Y. 2008).  That decision is
nondispositive.  Herko v. Metropoitan Life Insurance Co., 978 F. Supp. 149, 150 (W.D.N.Y. 1997)
(Arcara, J.).

On November 15, 2013, First Niagara moved to dismiss the Amended Complaint, arguing, *inter alia*, that plaintiff lacked standing to seek relief because the statutes at issue "make plain that they provide relief only to those borrowers whose satisfactions have not been recorded at all. There is no dispute that Zink's satisfaction has, in fact, been recorded." First Niagara's Memorandum of Law [37-1], p. 8. In rejecting that argument, I reasoned that "[u]nder First Niagara's interpretation (namely that penalties are only available when the satisfaction of mortgage is not recorded at all . . .), there could never be a penalty as long as the certificate of discharge was eventually filed. That interpretation would effectively nullify the penalty provisions (which increase commensurately with the period of delay in presenting the discharge certificate) - and that I may not do." Amended Report and Recommendation [51], p. 13 (subsequently adopted by Judge Arcara [59]).

The Uncontested Motion seeks the court's preliminary approval of the parties' agreement to settle this action, along with preliminary certification of a settlement class, subject to final confirmation at a later date. However, in supporting that motion, First Niagara has raised a *new* standing issue: "Another, perhaps even more significant, risk to Zink's and affected mortgagors' claims, is a current review by the United States Supreme Court of a similar statute - the Fair Credit Reporting Act. In Spokeo Inc. v. Robins, No. 13-1339, the Supreme Court is considering whether a violation of a federal statute entitling a consumer to civil penalties where no economic injury is suffered confers Article III standing. Spokeo could affect the viability of Zink's claims. In the event of a favorable decision on lack of standing, First Niagara would argue here that the same reasoning should apply to Zink's state statute claims." First Niagara's Memorandum in Support of Approval of the Modified Settlement [102], p. 4.

The precise question before the Court in Spokeo is "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute". Petition for a Writ of Certiorari, 2014 WL 1802228, *i. Certiorari was granted on April 27, 2015 (135 S.Ct. 1892), and oral argument was held on November 2, 2015. A decision is expected by the end of the Court's current term in June 2016.

By Order to Show Cause dated February 5, 2016 [104], I asked the parties to address whether I should stay further proceedings in this case pending the Court's decision in Spokeo. Both parties urge me not to do so. *See* Plaintiff's Memorandum of Law in Response [105], p. 2 ("[f]ew Orders could be more prejudicial to the putative class. Indeed, one of the reasons the settlement is fair and reasonable is the thread that an adverse decision from the Supreme Court in Spokeo will result in the case being dismissed and the putative class receiving nothing. This Court should not delay approval of the settlement until Spokeo is decided"); First Niagara's Memorandum in Response [107], p. 2 ("Spokeo could indeed affect the viability of Zink's and the class members['] claims and could dispose of the claims entirely. But a stay would simply drag out the litigation further, create more uncertainty, and resulting additional fees and costs to First Niagara as Zink has promised to contest adverse rulings and appeal if needed").

**ANALYSIS**

First Niagara suggests that it "raised <u>Spokeo</u> . . . to illustrate the validity of one of its defenses it *would* have maintained in the absence of the agreed settlement". First Niagara's Memorandum in Response [107], p. 1 (emphasis added). While First Niagara may have decided not to press the question of standing at this time, I may not ignore the issue.

Uncertainty as to subject matter jurisdiction cannot be treated merely as a factor to be weighed in the settlement equation; for unless subject matter jurisdiction is established, I cannot even consider the Uncontested Motion, much less approve it. *See* <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 94 (1998) ("[w]ithout jurisdiction the court cannot proceed at all in any cause"); <u>Cave v. East Meadow Union Free School District</u>, 514 F.3d 240, 250 (2d Cir. 2008) ("[i]f a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action"). Therefore, courts "must raise and decide jurisdictional questions that the parties . . . elect not to press". <u>Henderson ex rel. Henderson v. Shinseki</u>, 562 U.S. 428, 434 (2011).

Because "standing is perhaps the most important of the jurisdictional doctrines", <u>FW/PBS. Inc. v. City of Dallas</u>, 493 U.S. 215, 231 (1990), courts "have an obligation to assure ourselves that [plaintiff] had Article III standing at the outset of the litigation". <u>Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.</u>, 528 U.S. 167, 180 (2000); <u>Comer v. Cisneros</u>, 37 F.3d 775, 791 (2d Cir. 1994) ("standing is measured as of the time the suit is brought"). The necessity of standing is "in no way diminished by the fact that the plaintiff filed a class action suit . . . . Thus, if the named plaintiff lacks standing the entire class action fails". <u>Vaccariello v. XM Satellite Radio, Inc.</u>, 295 F.R.D. 62, 71 (S.D.N.Y. 2013).

In order for Article III standing to exist, "the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical".  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  "[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."  Summers v. Earth Island Institute, 555 U.S. 488, 497 (2009).  "To have standing, the plaintiff must have suffered a particularized injury, which means that the injury must affect the plaintiff in a personal and individual way."  Raines v. Byrd, 521 U.S. 811, 819 (1997).

"An interest unrelated to injury in fact is insufficient to give a plaintiff standing . . . . The interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right. "  Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 772 (2000).  I question whether the interest asserted by plaintiff in this case fits either requirement of Vermont Agency.  Rather than seeking compensation for the violation of a legally protected right, he seeks a statutory penalty, which by definition is "[p]unishment imposed on a wrongdoer . . . as distinguished from compensation for the injured party's loss".  Black's Law Dictionary (9th ed. 2009); National Federation of Independent Business v. Sebelius, ___U.S.___, 132 S. Ct. 2566, 2596 (2012) ("if the concept of penalty means anything, it means punishment for an unlawful act or omission").  *See also* City of New York v. Milhelm Attea & Bros., Inc., 2012 WL 3579568, *18 (E.D.N.Y. 2012) ("[t]he Court also rejects the City's suggestion that the [statute's] reference to 'civil penalties' somehow confers upon plaintiffs 'bounty hunter' standing, apart from any other cognizable injury . . . . [S]tatutes do not abdicate the standing requirements of the Constitution").

Nor does it appear that plaintiff had a constitutionally sufficient interest in "preventing the violation of a legally protect right" at the time the action was commenced. By that time, his satisfaction of mortgage had been filed, albeit belatedly (Complaint [1], ¶14). He does not allege that the belated filing injured him "in a personal and individual way" (Raines, supra), or that as to him there was any danger of its recurrence. Therefore, he had no *specific* interest in preventing further violations, and "[a] generalized interest in deterrence . . . is insufficient for purposes of Article III". Steel Co., 523 U.S. at 108-09.[3] *See also* Lujan, 504 U.S. at 573 n. 8 ("[the dissent argues that the] violation of a certain (undescribed) class of procedural duty satisfies the concrete-injury requirement by itself, without any showing that the procedural violation endangers a concrete interest of the plaintiff (apart from his interest in having the procedure observed). We cannot agree. The dissent is unable to cite a single case in which we actually found standing solely on the basis of a 'procedural right' unconnected to the plaintiff's own concrete harm"). "Deprivation of a procedural right without some *concrete interest that is affected* by the deprivation - a procedural right *in vacuo* - is insufficient to create Article III standing." Summers, 555 U.S. at 496 (emphasis added).

While "statutes *can* create legal rights, the violation of which constitutes sufficient injury to confer standing to sue", Boelter v. Hearst Communications, Inc., 2016 WL 361554, *2 (S.D.N.Y. 2016) (emphasis in original), "[t]his does not mean that violating a statute results *per se* in an injury-in-fact . . . . [I]n order to establish standing, a statutory violation must constitute a *palpable* deprivation." Id. (emphasis in original). I question whether the belated filing of plaintiff's satisfaction of mortgage amounts to a "palpable deprivation" sufficient for Article III standing.

---

[3]     "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." Id. In fact, the Complaint did not even seek injunctive relief.

Plaintiff argues that "once the Court signs the preliminary approval order, it will have ancillary jurisdiction over the settlement, even if it would otherwise feel compelled to *sua sponte* dismiss the action following a ruling in <u>Spokeo</u> . . . . Here, the Settlement Agreement provides for the Court's continuing jurisdiction". Plaintiff's Memorandum of Law in Response [105], pp. 6, 7. I disagree. "The doctrine of ancillary jurisdiction . . . recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters *properly before them*." <u>Kokkonen v. Guardian Life Insurance Co. of America</u>, 511 U.S. 375, 378 (1994) (emphasis added). Therefore, "[w]henever a district court *has* federal jurisdiction over a case, it *retains* ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees." <u>In re Austrian & German Bank Holocaust Litigation</u>, 317 F.3d 91, 98 (2d Cir. 2003) (emphasis added).

Accordingly, ancillary jurisdiction cannot arise unless this court has subject matter jurisdiction in the first place. The Settlement Agreement cannot furnish jurisdiction which is otherwise lacking, since "no action of the parties can confer subject-matter jurisdiction upon a federal court". <u>Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 702 (1982); <u>California v. LaRue</u>, 409 U.S. 109, 112 n. 3 (1972) ("parties may not confer jurisdiction either upon this Court or the District Court by stipulation").

Plaintiff further argues that "[a] stay is also contrary to the public interest. The purpose of the penalty provisions of New York's mortgage satisfaction laws is to encourage mortgagees lie Defendant to timely present certificates of discharge . . . . Staying this action, and possibly subsequently dismissing it, would send a signal to lenders in New York that they need not fear class actions seeking to hold them liable for failing to timely present certificates of discharge, a result this Court should eschew." Plaintiff's Memorandum of Law in Response

[105], pp. 12, 13.  However, it is an "age-old rule that a court may not in any case, even in the

interest of justice, extend its jurisdiction where none exists".  Christianson v. Colt Industries

Operating Corp., 486 U.S. 800, 818 (1988).  *See also* Milhelm Attea, 2012 WL 3579568, *18

("despite the broad remedial language of the CCTA, statutes do not abdicate the standing

requirements of the Constitution").

      "A court may . . . properly exercise its staying power when a higher court is close

to settling an important issue of law." Acton v. Intellectual Capital Management, Inc., 2015 WL

9462110, *2 (E.D.N.Y. 2015).  Although "numerous district courts . . . have reached different

conclusions on whether to stay bare statutory violation cases pending the Supreme Court's

resolution of Spokeo", Figueroa v. Carrington Mortgage Services LLC, 2016 WL 718289, *2

(M.D. Fla. 2016), I side with those courts opting in favor of a stay.  While I can certainly

understand (and even sympathize with) the parties' desire to resolve this case before the Supreme

Court decides the standing issue raised in Spokeo, "[e]ven where the parties are satisfied to

present their disputes to the federal courts, the parties cannot confer subject matter jurisdiction

where the Constitution and Congress have not".  Wynn v. AC Rochester, 273 F.3d 153, 157 (2d

Cir. 2001).

      "[B]efore deciding any case we are required to assure ourselves that the case is

properly within our subject matter jurisdiction." Id.  I have no such assurance at this time,

particularly since both parties have expressed concern that this court's subject matter jurisdiction

may not survive the Supreme Court's decision in Spokeo.  Therefore, a stay is appropriate. *See*

Figueroa, 2016 WL 718289, *3 ("[t]he Supreme Court's decision in Spokeo will likely settle the

issue . . . . If the Supreme Court determines there is no Article III standing where a plaintiff

brings an action based solely on a bare statutory violation, this Court will not have subject matter

jurisdiction").

Plaintiff suggests that "[t]here can be no dispute that under current Second Circuit

law, Plaintiff now has standing for his claim for statutory penalties". Plaintiff's Memorandum of

Law in Response [105], p.6. I disagree. "[T]he Fourth Circuit has . . . squarely rejected the

argument that, in the absence of any concrete injury, the mere deprivation of a statutory right is

sufficient to constitute an injury-in-fact for Article III standing . . . . The Second Circuit has

reached the same conclusion". Spokeo Certiorari Petition, 2014 WL 1802228, *10 (*citing*

Kendall v. Employees Retirement Plan of Avon Products, 561 F.3d 112, 121 (2d Cir. 2009)).

However, even if plaintiff were correct, a stay would still be appropriate. *See* Larroque v. First

Advantage Lns Screening Solutions, Inc., 2016 WL 39787, *2 (N.D. Cal. 2016) ("[t]o be sure,

the Ninth Circuit's Spokeo decision holding that a statutory violation alone is enough to confer

standing remains binding precedent in this case. But the Supreme Court's decision may deprive

Plaintiff of standing, eliminating the Court's jurisdiction over this action").

## CONCLUSION

One way or the other, the parties are entitled to a resolution of this case. There

are several possible outcomes in Spokeo: (1) the Supreme Court may conclude by the end of its

current term that the availability of a statutory penalty by itself creates Article III standing; (2)

the Court may conclude by the end of its current term that it does not; (3) in view of Justice

Scalia's recent passing, the Court may affirm by a 4-4 decision, which would have no

precedential effect (*see* Neil v. Biggers, 409 U.S. 188, 192 (1972)); or (4) the Court may defer

deciding the case until Justice Scalia's replacement is confirmed (or hell freezes over, whichever

comes first).

While an indefinite stay of proceedings serves neither the parties' nor the court's interest in a "just, speedy and inexpensive determination" of this action (Fed. R. Civ. P. 1), a stay of limited duration is a proper exercise of this court's discretion. Therefore, I will stay consideration of the Uncontested Motion pending the earlier of the Supreme Court's decision in Spokeo or June 30, 2016, the end of the Court's current term.

Dated: March 1, 2016

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge